The next case is Clark v. Eddie Bauer 21-35334. We have both of you. Yes, can you both give me a thumbs up or something so I know you can hear us? Yes, your honor. Okay, great. There's just two of you. Nobody's splitting any time? The reservation of time was much Great. Okay, we got through the last one. I just needed a lot of help. This one might be a little more straightforward. Whenever you are ready, we will hear your argument. May it please the court. Paul Carl Lucas on behalf of the plaintiff and the appellant Susan Clark. I would like to reserve four minutes for rebuttal. That's as complicated as the time split will be today. Okay. All right. There's a number of issues raised in this appeal. I would like to start by just very quickly summarizing the three things that Miss Clark as the appellant is requesting from this court. First, she is requesting that this court find that she has sufficiently pled a claim under Oregon's Unlawful Trade Practices Act. Number two, she is asking that this court find that she has pled inadequate remedies at law sufficient to request injunctive relief. In doing so, your honors may wish to clarify for the district courts, how you expect them to apply your decision in Sonar versus Premier Nutrition Corp, as there appears to be some confusion at the district court level on that issue. The third thing that we're requesting, if necessary, we believe that we've sufficiently pled everything. If your honors disagree, then we're asking your honors to please order the district court to grant us leave to amend. So those are the three things that we are asking for. And I will... I'm a little confused. My notes indicate that you're seeking to reverse the motion to summary judgment. No, this is a this is a 12-B motion, your honor. It is not a summary. Thank you. Certainly, sir. Can you help me with ascertainable loss? Can you explain to me why is this an ascertainable loss? It's an ascertainable loss because the law of the state of Oregon says it's an ascertainable loss. It's important to understand that ascertainable loss... Because it was misleading? Because the price tag was misleading? On the one hand, it is very counterintuitive because she got exactly what she paid for. But is the notion that we just look to the statute and say, well, it's misleading? Well, the loss is ascertainable. One of her losses is, as she pleads in complaint paragraph 71, if she had known the truth, she would not have purchased the products at the price that she paid. The entire price under this theory is a loss. And this court agreed with that in the Walters versus Vitaminshop case, where the court said the ascertainable loss, therefore, is the monetary value of a product that Walters would not otherwise have bought. That's one way of looking at it. That's the problem that's counterintuitive. You assume that the product will... No, no, we're not assuming that. What we're doing is we're following the Oregon Supreme Court statement in the Weigel case, which says that another way of looking at ascertainable loss equally as valid and also pled by our client is that the loss includes the expenditure of funds for goods that are not as desired by the customer and are not as represented by the seller. And here's the answer to your question, ma'am. Irrespective of their market value to others, the Simonson... Counsel, you don't have to be quite as condescending in reading this to me, because I have read it and I do understand it. But if you could help me engage in this, it would be helpful. I don't mean to be condescending. I had an espresso. My apologies. That's not what I meant at all. I'm trying to be emphatic. Okay, so let's walk through it, because I've read this. And give me your best shot, okay? Because color me skeptical on this claim. So I'm going to listen carefully and have you give me your best shot. The Simonson court stated, that's the Oregon Court of Appeals, that the ascertainable loss is the difference between the value of the product as represented, that's the price on the product tag and the value of the product as purchased. Simonson court also said that this does not require an objective loss in market value. I think maybe another way to look at this is, this aspect has to do with injury as opposed to any sort of calculation of damages. The courts of Oregon have found that this is, whether it's a loss of an advantageous bargain, not getting what was represented, or purchasing something you otherwise would not have purchased, those are ascertainable losses under Oregon. What do you claim, counsel? Do you claim the value that she paid or the value that she thought she was getting? The value she thought that was represented to her. She was told that by Eddie Bauer, that the Stormdown jacket was worth $229 and therefore she was getting a deal at $99, a savings of $130. She was not right. Are you asking for $99 that she wouldn't otherwise have spent or 200 and whatever less 99? This is a question as to whether or not there is a loss. Your question is whether or not there's damages and that is, we are requesting either the greater of the actual damages or the $200 in statutory damages. Before you get to damages, counsel, could you just clean up? I think the answer to my question is probably yes, but I haven't heard it yet. It sounds like you are claiming that there's a loss because she was essentially misled by the price. Is that right? Yes, she was misled by the false discount. I'm going to take yes for an answer and you can move on and finish Judge Bea's, answer to Judge Bea's question if you would, please. I believe I answered it. I'm happy to, if Judge Bea, would you like me to clarify? I'll happily clarify. Would you say, I'm confused. I don't know whether you're asking that she, you know, what, I don't know whether you're alleging that she lost the $99 or that she lost the $299. Under one theory, she lost the entire purchase price. I don't care about what theory, what are you alleging? Well, we're, we're, we're alleging that she entered into the transaction as a whole because of a lie, because she was told that if she could buy a $200 some loss, the loss was the advantageous bargain. It's the difference between the amount on the price tag of the $200 some and it's the $130 savings with regard to the stormbound jacket. The loss was $130 savings that she was represented she would be obtaining. She did not obtain that. She never had the $130 to spend, right? Well, the, the, I mean, that's an odd loss. Well, it may be, but that is a loss that is recognized under Oregon law. That's your argument. Okay, I got it. Thank you. I was then going to move on to the issue of that she has sufficiently pled an inadequacy of legal remedies. If that's go right ahead. It's your time to use as you wish. Thank you, Your Honor. The, the core error that was made by the district court appears on excerpts of a record page 10. And it is that the court said that Ms. Clark was required that did not plead that the legal remedies were inadequate because he asked you past and future harms. She, she believed that, sorry, I'm sorry. The court believed that both past and future harms were financial and can be cured by monetary damages. This is incorrect. We made it clear that past harms can be remedied by legal damages, but future harms do require an injunction. I'm sorry. Haven't they changed their ticket policy? So that no longer represents sale price? Well, what, what they did and what the district court found was that they simply moved from making one UTPA violation to a different UTPA violation in that now they have a comparable  not. Well, I believe it's a fact. The Eddie Bauer submitted evidence of its new tags with comparable value. The court looked at them and said, well, these are also in violation of the, of the, of the law. This court said in Davidson that provided that the client, the plaintiff could be wronged in a similar way, then that's not a inadequate succession of misconduct. Here we have a finding, which by the way, Eddie Bauer did not cross appeal against, that Eddie Bauer is continuing to violate the UTPA by using comparable value tags that do not state the origin. Sorry, I couldn't hear the last thing you said. Comparable value tags that what? That do not state the origin of the, of the comparable value. That's what the, the district court said that. I just couldn't hear what you said. Thank you. Yes. Yes. Counsel, I'm, I'm curious as to why, as to why she would want an injunction. I mean, what at this point, what, what would an injunction do for her and joining Eddie Bauer from doing what? It would be an injunction to prevent Eddie Bauer from continuing to violate the UTPA by advertising false discounts. It, she is allowed under the, the UTPA to bring this to, to request an injunction on behalf in order to stop it. The UTPA says itself that one of its purposes, and this is at Oregon statute 646.636, is to ensure succession of the unlawful practice. That's to benefit people in the future. If the argument were, in addition, the Davidson decision states that she is being harmed now. She's being harmed because she would like to shop at Eddie Bauer. What would the injunction look like? Would it just be a general injunction to obey the law? If so, does that, does that just mean that you have continuing jurisdiction in the district court to come in and challenge any pricing policy that Eddie Bauer decides to adopt in the future? I would think that the scope of the injunction would be limited to the, something along the rough outlines of the case, which is the advertising of false discounts. What we've stated is that. Sure, but if they're just, if they're just going to, if you just want an injunction to stop the practice that was at issue here, it doesn't seem to be really good evidence that Eddie Bauer will continue that practice. They may have a different practice that you disagree with, the putting down of comparable value on the tag. Do you get to litigate the comparable value change in this case? I think on an injunction perspective, the point is they are continuing to wrong her in the same way. This court in the TRW case said, look to whether or not there's a cognizable danger of a recurrent violation. They are continuing. There are many ways to lie about discounts and Ms. Clark can still obtain meaningful relief, both for herself and for the class. And that's going as to the future. I don't understand, Mr. Lukacs, why the statement comparable value is not a plain opinion and not a statement of fact. Judge Baya, could you restate your question so I can hear it? I don't understand why the statement comparable value is simply the opinion of Eddie Bauer and not a statement of fact. Well, because when, under the laws of Oregon, when you're making a statement, that there's data to back it up, that you're referring to a very specific price. We don't believe that there is data to back it up. Tell me exactly what the law of Oregon says about use of the term comparable value must accompany that to make it simply a statement of opinion and not one of fact. Your Honor, I would be happy to submit a supplemental brief that specifically states that. You haven't done so yet, right? Well, there's a reference to reference price in the Oregon regulations. And as the judge, the reference price needs to be a price that was used within the preceding 30 days. And if it's not, then it has... But the term comparable value is not a reference price. It's an opinion as to what the value is, not what they're getting for the sale. Well, we respectfully disagree. We believe that a comparable value tag is a form of reference price because it is simply... What case says that? I would refer to the Oregon administrative rule that we cited, which contains an administrative definition of the word reference price, where it says a reference price is any price to which a person compares the currently represented offering price of its own goods. That's Oregon. But value is not price. Do you agree with that? Two different words, right? They are different words. They are part of the same scheme to falsely advertise discounts when, in fact, the goods are not being offered at a discount. It's quite a difference saying, I think I can sell it at this price, comparable value, to I have sold it at this price. Don't you think? Well, comparable value usually means my competitors are selling it at this. It doesn't mean that at all. It means that the person using the term compares this in value to something else. It doesn't talk about an executed transaction at all. We see it as that the ordinary consumer would see that as being a comparison to what... Now, my next question is, if you can cite me the Oregon law with which you're very familiar, tell me a case that says that the term value equals price. I would happily submit a supplemental brief to your honor. All right. Thank you very much for your answer. Thank you. Counselor, we're going to hear from opposing counsel at this point, please. Thank you, Judge Christian. May it please the court. I am Michael Vadas from Steptoe and Johnson representing the defendant's appellees, Eddie Bauer and Eddie Bauer parent. I'd like to address two primary issues this morning with the court's permission. One is the plaintiff's lack of Article III standing to seek injunctive relief. And second is the failure to allege ascertainable loss within the meaning of Oregon law. As to standing, Supreme Court precedents make it very clear that in order to seek injunctive relief, a plaintiff must allege future harm that is both concrete and imminent, or another way of saying imminent in the Supreme Court's cases is certainly impending. And I would respectfully submit that Ms. Clark has not alleged injury that is either concrete or imminent. On concreteness, the future injury that she alleges is that she will not be able to trust Eddie Bauer's price references in the future. May I interrupt you for a second? Hasn't Ms. Clark alleged that her ascertainable loss is indeed the money she paid for the jacket because she wouldn't have paid that money had she not been misled by the tag saying it was a sale price at a higher value? Yes, Your Honor, what I'm speaking to here is the future injury that she's trying to avoid by having this court or having this court direct the district court to issue an injunction. So I'm just thinking right now about- But counsel, isn't Judge, Judge Baer's got the same problem I've got, it's either ascertainable or it's not. And I made it pretty clear that it's difficult for me to see that it is, except that he's relying on the Oregon statute says so, that to mislead somebody in this way that we've been discussing this morning is ascertainable. So really to cut to the chase on this argument, if you could for me, if it's ascertainable, do you still have the problem here? No, I think they're two entirely different questions. The ascertainable loss question goes to whether there's an ascertainable loss from the prior purchases that she made. I get that part. So you're arguing now understanding concrete and particularized, and we're really familiar with that standard. So take another run at it, please, and tell me why you think- But I'm talking about now, about her standing to seek injunctive relief against future harm. Right. And precedents make clear that you need standing for whatever type of relief you're seeking. So with regard to future harm, the future harm, she alleges, is not about what she might pay for future Eddie Bauer products, because she hasn't alleged that she's going to. She says she would shop at Eddie Bauer again, if she could trust its reference prices, but she can't trust the reference prices. So she's alleged an informational injury. That's how she's put it in her brief. So here's my big conceptual problem with the standing argument. There's no question that she has standing under Article III to bring the claim for damages. And I'm really puzzled by the fact that you'd say that she has, I think you have to concede that she has standing to do that, but then she doesn't have standing to seek injunctive relief. Why isn't that just an argument on the merits of injunctive relief rather than argument about standing? Because the Supreme Court and this court have made clear that you need standing for each type of relief you seek. This didn't come up in the briefing because I don't think that was contested by the plaintiff appellant. But I'd be happy to submit a supplemental briefing or a letter to the plaintiff appellant that made clear that you have to have standing for each separate type of relief. So you may have standing for damages, but that doesn't give you standing to seek injunctive relief. I think that's pretty well established. Unless my colleagues want briefing on that, I think it's pretty well established. Is Judge Bybee right that you agree that she has standing to seek retrospectively for the damages she's claiming? Is that right? Well, I'm willing to concede that she has standing based on past damages. I think it's a very close question. But I think I feel the court driving me back to... Counsel, how can that be a close question? How is that a close question? Whether you win on the merits, that's a 12B6, but you're here arguing that she can't even bring the claim. No, I'm not arguing. I said I'm willing to... Well, you told me that it was a close case on standing. I don't think it's close, so I'm really puzzled now. You've really lost me on the standing argument, counsel. Again, our standing argument is about injunctive relief and only injunctive relief. So take another run at that one, okay? Take another run at the one you're making about injunctive relief. I'm going to listen... About injunctive relief. Okay. To have standing to seek injunctive relief, you have to have injury that's concrete and imminent. Under the case law, a statement that a plaintiff one day intends to return to a place where she may be damaged by the defendant's activities is not sufficient. The court describes that in the Lujan case and in the Summers case, it describes those sorts of allegations as someday intentions. That's precisely what we have here. Counsel, in those cases, was there a claim for damages for past wrongs? I don't believe in Lujan there were, but in other cases there were. But when you're talking about injunctive relief... So you're relying on imminent, not speculative. That's what you're relying on. We're losing a lot of your time. That's what you're relying on. Yes. Yes. And so courts look to factors, you know, does she live nearby? Does she have concrete plans on a specific date to go there? Is she constantly put in a position where she's seeing the defendant's advertisements? Does she go to their stores? Does she say that she goes to these outlet malls? None of that here. In fact, the complaint shows that on the plaintiff's own allegations, she's only been to an Eddie Bauer outlet mall twice in four years. She doesn't say that she sees their advertising all the time. There's nothing indicating, there's nothing that makes it plausible that she's going to be imminently harmed by Eddie Bauer's pricing. I think it's helpful for me to understand that what you're talking about, I think, is the conjectural, not speculative. You're relying on that line. We're pretty familiar with that. I just wanted to figure out what you're relying on. And I think we got that now. It's completely conjectural and not imminent. And it's also not concrete. But if I can use the rest of the time, I feel the court wanted to address the ascertainable loss as to the damages. I'd like to address that. I think Oregon law and the Oregon Supreme Court's decision in Pearson make clear that you have to separate the alleged deception from the question of whether there's ascertainable loss from that deception. This complaint alleges deceptive reference prices. What it doesn't allege is that there was any loss because Ms. Clark received exactly what she paid for. She doesn't allege that the fleece or the jackets were worth less than what she actually ended up paying. She doesn't allege that they were defective in any way. She simply alleges that she thought that they, at one time, sold for a higher price. So subjectively, she thought she was getting a good deal. But in Pearson, the Oregon Supreme Court stated that there's no logically viable way to show ascertainable loss if the product as advertised is the same price as the product that you ultimately received. So in this case, if the fleece that she paid $19.99 for, if it had only ever been advertised as $19.99, she still would have paid $19.99 for it. The fact that it was advertised as, at one time, costing $39.99 and now costs $19.99, she still paid only $19.99 for it. And the Pearson case makes explicit that in that sort of situation, there is no ascertainable loss under Oregon law. I'm not so sure about that point. That's where we started at the top of the hour, for me anyway, about ascertainable loss and getting what you pay for and it being sort of counterintuitive. But it seems to me like, boiled down, you read Pearson as necessarily relying on a defect in the product. Not necessarily. I mean, there may be other ways that there's an ascertainable loss. But I think I will quote from Pearson on this point because I think it's important. It says that plaintiff's theory of diminished value provides no logically viable theory on which class-wide economic losses can be established where there's no difference in the price between a product with the represented feature and one without it. It's the represented feature part. Aren't we worried about the represented feature part? Well, the plaintiffs have tried to say that the reference price is a represented feature because Eddie Bauer is representing that this once cost twice as much. Exactly. They are essentially represented. Now, they're not tying it only to that subset or sub-provision of the UTPA. But they are saying that this is the same as a feature because it's something that appealed to her. It's an aspect of the product that appealed to her. But the point I'm trying to make is that Pearson says that if you can't show that there's a difference in the price between what you thought you were getting and what you got, there's no ascertainable loss. I think it's also important to note something that the Oregon Supreme Court says in footnote 17. It says, look, there are a lot of subsections in the UTPA that address all sorts of unlawful trade practices. Not all of them would be ones where a private plaintiff could show ascertainable loss. And that's why the UTPA gives the Oregon Attorney General the power to go after practices where there is no ascertainable loss. And it describes a number of things, a number of subsections of the statute where it says there may or may not be. And in fact, there is not likely to be ascertainable loss in these sorts of situations. But the Oregon Attorney General can bring an action. That's precisely what we have here. Let me ask a question of you. What's wrong with her allegation that if she hadn't seen the misrepresented sale price, she wouldn't have bought the item at all? That's her ascertainable loss. I think, again, under Oregon law, she hasn't alleged ascertainable loss because she's not alleging that the products that she got are worth less than what she paid. So how can you... It's worth less to her, isn't it? Because she didn't get a bargain. But courts have held numerous times that a subjective feeling that she didn't get the bargain that she wanted is not enough to prove ascertainable loss. There has to be some objective way for a court to measure it. And not only in Oregon, but courts in other states that have similar ascertainable loss requirements in their unfair trade practices acts have said the same thing, that you can't equate the deception with ascertainable loss. In economics, there's the notion of the superior good. That is that some things that are valued because they are far more valuable than others. If somebody thinks that they've just bought a $200 coat and they got it on sale for $20, they got a steal of a deal, and somebody says, I just bought it down the street at Walmart, it's always $20 at Walmart. Why isn't there some loss there, whether it's bragging rights or whether it's what you thought you were getting? Because there's no way to objectively ascertain the loss under the precedence. Again, if what you got, unless you can show that it's not worth $20, there's no way to measure your loss because your subjective feeling does not give the necessary objective metric by which to say, well, I lost X amount. You can't say that it's an objective measurement to say, well, she lost $180 because she thought she was getting a $200. She didn't pay $200. She paid $20. Council, what if we were dealing in pirated goods? We've got somebody falsely making Louis Vuitton bags or things like that. What if they are of comparable value? What if they literally are every bit as good in the quality of the product and the durability and the symbols that appear on it? It would take a whole raft of FBI experts to tell that it had been pirated. Would somebody who bought a pirated good have a claim for deceptive practice? You got absolutely everything that you could have possibly asked for, except that it didn't come out of the Louis Vuitton factory. There wouldn't be the ability to claim that it's authentic. That's true, but nobody but an expert could tell. Would that be a claim against the seller, the pirate seller, or against the original man? If you buy the Louis Vuitton good, have you been cheated if it's not really a Louis Vuitton good, if it is in every way comparable to a Louis Vuitton good, except that it's not? In that case, yes, I believe you would have a claim because it's not the good that you thought you were getting. But what if you think that you were buying something that Eddie Bauer sells would sell at $200, and that there are willing purchasers at $200, and you got it for $20? It was a steal of a deal. But when you got it for $20, it was advertised as an Eddie Bauer product for $20, and that's what you paid for it. So I think it's very different. But Eddie Bauer is also telling you that it's been marked down from $200, which it wasn't. Correct. And that's why in those instances, I think under the Oregon scheme, you would need to rely on the Oregon Attorney General to investigate and bring an action if he thinks that this constitutes a violation of the law. So Oregon has a viable cause of action by the you don't have an ascertainable loss, so there's no private right of action. Is that your argument? I'm certainly not conceding that there's any violation of the law here. But what I would agree is that you can have instances of deception where there's no ascertainable loss. And as this Oregon Supreme Court says in that footnote 17 I mentioned earlier, that's precisely why you have Attorney General enforcement to deal with those sorts of cases. I just reread footnote 17, and I appreciate you pointing it out. I'm not sure I'd read it the same way you do, but different point. Your, I think, broader point on Pearson had to do with really this question about whether or not there needs to be some, whether it's enough to simply complain about this price difference, whether there has to be something about the nature or quality of the product. I used the word defect earlier, but I meant it as broad as possible. Something about the product, right? Something about the product. Yes, I'm sorry. That's okay. It's just, I'm taking too long to get to my questions here. But what you said is, yes, I think pretty clearly. And you said that you first cited Pearson, but then it seems like you're trying to tell us that there's other cases as well. What's your strongest case law support for that contention? I think it's Pearson. I think there are other cases in our brief that support that. Deconsoling ones or just, because we've read Pearson. Yes, let me just find. I believe another is Simonson. Okay. And I think Weigel also. I mean, I think these cases all involve something where there's an aspect, there's a feature of the product that is not as advertised. There's something wrong with it. I think that's right. I think they all do. Maybe this is a better way to ask the question. I think these other cases do involve situations where there was something else about the product, the nature, the character, the quality of the product. But where does it say that as a necessary prerequisite? That's what I'm looking for. That's the reasoning that I should understand. Yes, the fact is plaintiff has been unable to cite any case that's on force with this case. This would be an expansion if we went this way. It would be an expansion, and I think it would go against the logic of Pearson. Okay. Is there any reason to certify this to the Oregon Supreme Court? I don't think that's necessary because I think Pearson gives enough guidance to this court. Might it be useful? We thought there was a gap between Pearson in this case. Well, I certainly think it would be better than ruling in the plaintiff's favor. But I do think Oregon law just does not allow a private right of action because there is no ascertainable loss under the guidance given by the Oregon Supreme Court and Pearson. Counsel, we've taken you significantly over your time. Let me just double check and see if there are any additional questions from my colleagues. Thank you. No, it looks like we're good to go. Thank you very much for your answers and your patience with our questions. Thank you, Your Honor. You bet. The opposing counsel has some time left. Yes, thank you. Judge Bea, I have your citation for you. This is in the Code of Federal Regulations. It's 16 CFR 233.2. That is an FTC regulation about comparable value comparisons. Sub A states that a comparable value comparison is a situation in which someone offers goods at prices lower than those. That means those prices being charged by others for the same merchandise in the advertiser's trade area. That's sub A. Sub C says there's a closely related form of comparable value advertising, which is to offer a reduction from the prices being charged by others in the trade area for other merchandise of like grade and quality. So you see, under the FTC regulations, which are followed by states, then the comparable value, it's not a statement of opinion. It's a statement that there are other prices out there. And that's the end, I hope, answers. Are you citing the CFR Federal Regulations, correct? This is a federal regulation, which many states... Is that part of Oregon law? The Oregon law often follows and looks to these FTC regulations. Why do you say that? That is the standard in most states. I can certainly look to find a citation for you where they do that. You might want to do that. Yes, I will absolutely do that and get that to you, Your Honor. Let me go back to... Now, could I get you to... Forgive me for interrupting you, but could I get you to just... I think we finally got to where we're trying to get to here about Pearson and what it does say and what it doesn't say. My read of the case law is that in the past, the case law to date has required something else about the product, what I'm calling a character or nature of the product. Opposing counsel, I think, concedes that point, but says that this would be an expansion of Oregon. Do you agree this would be an expansion of the law, or is there a case that has gone there? I don't believe there's a case that has gone there. I believe while what you're describing may occur in the facts of various cases, that is not the actual law. If Your Honor see it as an expansion, it can be certified to the Supreme Court. If I can just make one additional point... Sure, go right ahead. You're fine. Okay. There is a third theory of ascertainable loss, which is in the complaint. It's in the 27 and 109. This is an economic analysis. What the economists have found is that what false advertising does is it shifts the demand curve. It artificially, by lying, increases demand for the product, which likewise increases the ability of the defendant to charge a price for that product. Now, that increase may only be one or two or a couple of dollars. In fact, we have opening brief, and it's on page 53 in footnote nine. This has to do with the storm-bound jacket that our client paid $99 for. We've been tracking those prices. Eddie Bauer, in the previous 60 days, actually offered that jacket from between $89 and $91. She paid more. She paid $99 for something that had previously sold at $89 or $91 because lying and advertising shifts the demand curve, artificially increasing demand, allowing an artificial increase in prices. That increase in price, no matter how small, is an ascertainable loss. We plug that in paragraph 27. Counsel, you're over your extra time, so please wrap up. That's all I have to say. All right. Thank you both so much. Thank you very much for your arguments this morning. We're going to take this case under advisement, and we stand at recess. Thank you. Thank you. All rise. Hear ye, hear ye. All those who have business with the Honorable, the United States Court of Appeals for the Ninth Circuit will now depart. For this court, for this section, now stands adjourned.
judges: BYBEE, BEA, CHRISTEN